UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARISA ANNE GRIEBSCH,

                                        Plaintiff,

        v.                                              7:05-cv-0958

DARLENE WEAVER,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## MEMORANDUM - DECISION and ORDER

### I.      INTRODUCTION

        Plaintiff Marisa Anne Griebsch commenced the instant action in state court
asserting claims for defamation and the intentional infliction of emotional distress.  The
United States of America removed the action to this Court upon its certification that, at all
times relevant hereto, Defendant Darlene Weaver was acting in the scope of her
employment as an employee of the United States Postal Service.  The United States now
seeks to be substituted in the place of Weaver, see 28 U.S.C. § 2679(d)(2), and to dismiss
the action for failure to proceed under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.

### II.     FACTS

        According to the Complaint, Plaintiff was a letter carrier for the United States Postal
Service ("USPS") in the Town of Gouverneur, New York.  Defendant Weaver was employed
as a Rural Carrier Associate (substitute) for the USPS in the Town of Gouverneur.  Michael
Kiernan was the Postmaster in the Town of Gouverneur.  Kiernan was Plaintiff's supervisor.

The Complaint alleges that Kiernan requested that Defendant submit a letter to him concerning Plaintiff's job performance.  Compl. at ¶ 17.  Defendant submitted the letter on June 9, 2005.  It is alleged that the letter claimed that Plaintiff was not properly taking care of her route edit book[1] and that Plaintiff instructed Defendant to remain quiet regarding some irregularities concerning Plaintiff's delivery of the mail.  Id. at ¶ 25.  It appears that Weaver's letter suggested that Plaintiff was delivering "junk mail" to inactive mail boxes to make it appear that she was servicing more mail boxes than were actually active.[2]

The Complaint alleges that Plaintiff was terminated from her employment with the USPS.  At least one of the reasons for Plaintiff's discharge was because she falsified her route edit book to make it appear that she was servicing more mail boxes than were active.

The Complaint states that Defendant made false allegations against Plaintiff and suggests that Defendant did so with the purpose of getting Plaintiff fired so that Defendant could take over Plaintiff's job and with the purpose of injuring Plaintiff.

## III.    DISCUSSION

The sole issue before the Court is whether the United States may properly be substituted for Darlene Weaver.  The United States takes the position that Weaver was acting within the scope of her employment.  Plaintiff contends that Weaver engaged in intentional torts outside the scope of her employment and, thus, she could not have been acting in the course of her employment as an employee of the USPS.

---

[1] Rural carriers are required to maintain an edit book that consists of house numbers and customer names.

[2] It appears from the Complaint that Plaintiff's pay rate was determined, at least in part, by the number of mail boxes that she serviced.

The issue of whether Weaver was acting within the scope of her employment is a question for the Court to decide.  See Guttierez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1152-53 (4th Cir. 1997); McHugh v. Univ. of Vermont, 966 F.2d 67 (2d Cir. 1992).  The Court, and not a jury, decides the factual issues necessary to make the scope of employment determination.  Guttierez de Martinez, 111 F.3d at 1153 ("[A] plaintiff seeking relief against a federal employee is not entitled to a jury trial on the scope-of-employment issue, even if the relevant state law would provide a jury trial. . . . Therefore, the district court may resolve disputed issues of fact in considering a challenge to a scope-of-employment certification."); McHugh, 966 F.2d at 74.

As the Fourth Circuit Court of Appeals has explained, the procedure for making the scope of employment determination is as follows:

> The Attorney General's certification is conclusive unless challenged. . . . When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment. . . .  In assessing whether the plaintiff has rebutted the prima facie case, however, the district court should not defer to the Attorney General's certification, but should instead review the question de novo.
>
> Therefore, the district court may allow (in its discretion) limited discovery or conduct an evidentiary hearing, but should not do so if the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact.  It is for the district court to assess the sufficiency of the evidence produced by the plaintiffs.  Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing.
>
> In short, the scope-of-employment certification is prima facie evidence that the defendant federal employee acted within the scope of his employment, thereby placing the burden on the plaintiff to prove otherwise.  If the plaintiff does not come forward with any evidence, the certification is conclusive.  Moreover, the plaintiff's submission must be

specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation.  If the plaintiff's evidence is sufficient to carry the burden of proof, the defendant federal employee or the Government may come forward with evidence in support of the certification.  At this point, the district court may permit (and limit) any needed discovery.  Thereafter, the district court must determine whether there are any genuine issues of fact material to the scope-of-employment decision, and, if so, it may conduct an evidentiary hearing to resolve these factual issues.  Once any factual issues are resolved, the district court should weigh the evidence on each side to determine whether the certification should stand.  During this process, the district court should remain cognizant of the considerations weighing against protracted litigation under the Westfall Act.[3]

Guttierez de Martinez, 111 F.3d at 1153-55 (internal quotations and citations omitted);

see McHugh, 966 F.2d at 74; Tyson v. Willauer, 2002 WL 31094951, at *3 (D. Conn. 2002).

The Second Circuit has noted that:

> [A] district court may review *de novo* an Attorney General's certification of scope of employment under the Westfall Act.  Such review is triggered by the government's motion for substitution and opposition papers from the plaintiff that allege with particularity facts relevant to the scope-of-employment issue. . . . The context of the alleged acts that is relevant to the scope of employment issue is a matter of fact to be determined by the district court . . . after an appropriate factual hearing.

McHugh, 966 F.2d at 74.

In making scope of employment determinations, the Court applies the law of the state where the conduct occurred, which here is New York.  See McHugh, 966 F.2d at 75.  Under New York law, the mere fact that an employee is alleged to have engaged in an intentional tort does not compel the conclusion that the employee was acting outside of the scope of employment.  See Sims v. Bergamo, 3 N.Y.2d 531, 534-535, 169 N.Y.S.2d 449, 147 N.E.2d 1 (1957) (an employer may be held vicariously liable for the intentional torts of an

---

[3] The *Westfall Act* was legislation passed by Congress to amend the Federal Tort Claims Act in response to the Supreme Court's decision in Westfall v. Erwin, 484 U.S. 292 (1988).

employee if the employee was acting within the scope of employment); <u>Brancato v. Dee and Dee Purchasing</u>, 296 A.D.2d 518, 519, 745 N.Y.S.2d 564 (2d Dep't 2003), <u>leave to appeal denied</u>, 99 N.Y.2d 508 (2003).  An employee's act is within the scope of employment if "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instruction."  <u>Riviello v. Waldron</u>, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979).  On the other hand, an employee is not acting within the scope of employment if she was acting solely for personal motives unrelated to the furtherance of the employer's business.  <u>White v. Jamil Abdo Alkoutayni</u>, 18 A.D.3d 540, 794 N.Y.S.2d 667 (2d Dep't 2005).  "Among the factors to be weighed are: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated."  <u>Riviello</u>, 47 N.Y.2d at 303.  With respect to this latter foreseeability requirement, "New York courts require foreseeability of general, rather than specific, acts."  <u>Reynolds v. United States</u>, 927 F. Supp. 91, 95 (W.D.N.Y. 1996); <u>see</u> <u>also</u> <u>Murray v. Watervliet City Sch. Dist.</u>, 130 A.D.2d 830, 832 (3d Dep't 1987).

        Here, the Attorney General has certified that Weaver was acting within the scope of her employment.  Accordingly, the burden shifts to Plaintiff to prove otherwise.  Plaintiff has not submitted any evidence but, instead, relies upon the allegations in her Verified Complaint, which the Court will treat as an affidavit from Plaintiff.  As noted, the Complaint itself indicates that Weaver's letter was in response to Kiernan's "special request."  Compl. at ¶ 17; <u>see</u> <u>also</u> Pl.'s Mem. of Law at 10.  Plaintiff concedes that "some of the acts, if not all, took place at a time and place connected to employment," and that "the employer could have

anticipated the employee would write the letter as requested."  Pl.'s Mem. of Law at 10, 12.
The only possible allegations in the Complaint suggesting that Weaver acted outside the
scope of her employment are found at paragraphs 31 and 38.  At paragraph 31, Plaintiff
alleges that Weaver acted out of hatred, ill will, and spite toward Plaintiff.  At paragraph 38,
Plaintiff alleges that Weaver acted "to cause plaintiff to lose her job so as to advance
defendant's career opportunity with the Post Office."

In response, the United States has submitted an affidavit from Kiernan who states
that: (1) in April 2005, he began to suspect that there were discrepancies in the reportings of
mailboxes that were vacant for Rural Route 3 (Plaintiff's route); (2) a rural carrier's pay is
based, in part, on the number of active mailboxes to which mail is delivered; (3) he asked
Weaver to provide a written report concerning information about the number of vacant
mailboxes on Rural Route 3; (4) he asked Weaver to provide any information she had about
discrepancies in the edit book as well as any interactions Weaver had with Plaintiff
concerning those subjects; (5) Weaver's letter was in response to Kiernan's requests; (6)
pursuant to USPS regulations, Weaver was obligated to respond to Kiernan's requests; and
(7) there are three other individuals that have more seniority than Weaver and, thus, Weaver
would not be next in line to fill Plaintiff's position.

Assuming that Weaver provided false information to Kiernan and that she did so
intentionally or for a wrongful purpose, there is no indication that she was acting outside the
scope of her employment.  It is undisputed that the time, place and occasion for the act are
directly connected the USPS's business.  It is similarly undisputed that Weaver prepared the
letter in direct response to Kiernan's request as part of his investigation into Plaintiff.  As
such, the communication was between employees of the USPS.  The contents of Weaver's

letter are directly related to Kiernan's request - information concerning Plaintiff's edit book and addresses that she claimed to be inactive.  There is no extraneous material in the letter.  As such the information in the letter unquestionably concerned matters pertaining to the operations and affairs of the USPS.  Even if the Court were to conclude that Weaver was acting solely for personal motives (*e.g.*, to get Plaintiff's job),[4] it cannot be said that her actions were unrelated to the business of the USPS.  To the contrary, Weaver's actions were not only incidental, but directed related to, Kiernan's investigation of Plaintiff.  Compare Brancato v. Dee and Dee Purchasing, Inc., 296 A.D.2d 518, 519 (2d Dep't 2002) (employee was not acting within the scope of his employment where his actions were not "incidental to the furtherance of the . . . defendants' business interests.").  Furthermore, Plaintiff's letter was reasonably anticipated by the USPS.  In fact, the USPS expected a letter from Weaver concerning Plaintiff.  Although Plaintiff argues that the USPS could not have reasonably anticipated that the employee would have authored a defamatory statement, the inquiry is not that narrow.  Again, "New York courts require foreseeability of general, rather than specific, acts." Reynolds, 927 F. Supp.2d at 95 (substituting the United States as a defendant in a slander claim); see also Murray, 130 A.D.2d at 832.  Thus, it is irrelevant whether the USPS could have foreseen that Weaver might make defamatory statements.  What is relevant is that the USPS could have reasonably foreseen that Weaver would submit a written document concerning Plaintiff's route and active mailboxes. Id.; see Murray, 130 A.D.2d at 832.

---

[4] The contention that Weaver acted to get Plaintiff's job is unsubstantiated by any evidence.  Moreover, this theory is somewhat undermined by the fact that Weaver was fourth in line to get Plaintiff's job.

For the foregoing reasons, the Court finds that Plaintiff was acting within the scope of her employment.  Because Plaintiff was acting within the scope of her employment, the United States is properly substituted as the Defendant.  28 U.S.C. § 2679(d); <u>McHugh</u>, 966 F.2d at 74-75.  Plaintiff's Complaint asserts claims for intentional torts (defamation and the intentional infliction of emotional distress).  The United States has not waived its sovereign immunity with respect to defamation.  <u>See</u> 28 U.S.C. § 2680(h) (stating that the United States has not waived immunity with respect to "[a]ny claim arising out of . . . libel, [or] slander."); <u>see</u> <u>also</u> <u>B & A Marine Co. v. Am. Foreign Shipping Co.</u>, 23 F.3d 709, 714-715 (2d Cir. 1994); <u>Guccione v. United States</u>, 847 F.2d 1031, 1033 (2d Cir. 1988); <u>Lupinetti v. Melon</u>, 2004 WL 2634306, at *3 (W.D.N.Y. 2004).  Moreover, because Plaintiff's claims for the intentional infliction of emotional distress arise out of the alleged defamation,[5] the intentional infliction of emotional distress claim also is barred.  <u>See</u> <u>United States v. Neustadt</u>, 366 U.S. 696, 81 S. Ct. 1294 (1961); <u>Truman v. United States</u>, 26 F.3d 592, 595 (5th Cir. 1994) ("If the conduct upon which a claim is based constitutes a claim "arising out of" any one of the torts listed in section 2680(h), then the federal courts have no jurisdiction to hear that claim."); <u>Borawski v. Henderson</u>, 265 F. Supp.2d 475, 484 (D. N.J. 2003).  Accordingly, the Complaint must be dismissed.[6]

---

[5] The factual allegations in the Complaint supporting the intentional infliction of emotional distress claim are that Weaver lied to Kiernan about Plaintiff's job performance.  These alleged lies were contained in the alleged defamatory letter.

[6] It should also be noted that Plaintiff did "not oppose the defendant's dismissal theory under the Federal Tort Claims Act, . . . [or] sovereign immunity . . ., but rather oppose[d] the substitution of the defendant with the United States that would predicate such a dismissal."  Pl.'s Mem. of Law at 5-6.

**IV.      CONCLUSION**

       For the foregoing reasons, the United States' motion to be substituted as a

Defendant and to dismiss is GRANTED.  The Clerk of the Court shall close the file in this

matter.

IT IS SO ORDERED.

Dated: September 16, 2005

 

                                      Thomas J. McAvoy

                                      Senior, U.S. District Judge